FIRST NATIONAL BANK OF APPLETON CITY, MISSOURI, Defendant in Error, v. E. P. GRIFFITH and CATHERINE GRIFFITH, Interpleader, Plaintiffs in Error.

Kansas City Court of Appeals, January 17, 1916.

1. **ATTACHMENTS: Affidavit: Amendment: Jurisdiction.** An affidavit is an indispensable prerequisite to the issuance of a valid attachment writ. In an attachment suit the court obtains jurisdiction over the *res*, the property attached, only by the levy thereon of a writ properly issued. If the affidavit filed is indeed an affidavit but is merely insufficient in some one or more features thereof, the statute provides that it can be amended. But where a writ of attachment is issued and levied without an affidavit, or (which is the same thing), upon a paper purporting to be an affidavit but which, in fact, is not, the writ is void and cannot be galvanized into life by the filing of an affidavit attempting to amend an affidavit which never existed. And the levying of such a writ cannot confer jurisdiction over the *res*.

2. ——————: ——————: ——————: ——————: **Appearance of Defendant.** Nor does the appearance of the attachment defendant confer jurisdiction over the property seized. Such appearance would give juridiction over the person of the defendant but this would have no effect in giving validity to the attachment part of the suit.

3. ——————: ——————, Plaintiff brought suit on two promissory notes and filed a bond in attachment but no affidavit. A writ was issued which was one of summons and also of attachment. No levy was made of this writ however. Three days later plaintiff filed an affidavit for attachment and the court ordered the attachment writ to issue. Levy was made upon the property under the second writ, and a garnishee summoned. The attachment defendant appeared and answered to the merits and also filed a plea in abatement. *Held*, that the court acquired jurisdiction to render a personal judgment against the defendant by reason of his having appeared and answered to the merits; and that it obtained jurisdiction over the *res*, the property attached, by virtue of the levy made under the second writ. The jurisdiction over the *res* did not depend in any way on the first writ. Neither was the second writ issued upon an affidavit amendatory of any former step attempted to be made.

4. ——————: ——————: **Filing Affidavit in Suit Commenced by Summons.** When the petition was filed and the writ of summons was issued a suit "commenced by summons" was pending, and the plaintiff had a right to file an affidavit in attachment and, upon taking all the steps necessary to complete its right to attachment, was entitled to have the writ of attachment issue.

5. ——————: ——————: ——————: **Approval of Bond.** The court, in ordering the attachment writ to issue, thereby impliedly approved the bond although the record discloses no formal entry of an order approving the bond.

6. ——————: ——————: ——————: ——————: **After Judgment.** It is too late after judgment on a plea in abatement to raise the objection that the bond was not approved.

Error to Bates Circuit Court.—*Hon. C. A. Calvird,* Judge.

Affirmed.

*C. I. Spellman* for plaintiffs in error.

*Silvers & Silvers* and *Parks & Son* for defendant in error.

TRIMBLE, J.—This was a suit brought by the First National Bank of Appleton City against E. P. Griffith on two promissory notes aggregating about six thousand dollars. A writ of attachment was issued in aid thereof and levied upon certain real estate and personal property belonging to Griffith; and one, J. M. Burns, was summoned as garnishee. Griffith appeared and filed a plea in abatement denying the alleged grounds of the attachment, and also filed answer to the merits. The bank filed a reply to the answer on the merits. Upon a trial of the issue raised by the plea in abatement, the bank obtained a verdict and judgment sustaining the attachment. Afterwards the suit was tried on the merits and the bank obtained judgment on both notes.

No motion for new trial was made nor was any bill of exceptions filed. The defendant Griffith, and his wife as interpleader, thereupon sued out a writ of error in this court and brought the case here on the record proper, and on a stipulation entered into between the parties in this court. The sole contention of the parties who sued out the writ of error is that the trial court obtained no jurisdiction to proceed in the case and that, for that reason, all steps taken therein were *coram non judice* and void. This view is bottomed upon the theory that the writ of attachment was issued upon an affidavit *amendatory* of a former affidavit which was an absolute *nullity,* and, therefore, could not be amended.

It may be conceded at once that if the plaintiffs in error are right in their premise, then their conclusion is right. For a thing which is nothing cannot be *amended* so as to be something. If the writ of attachment levied upon the property and by which it was seized, was issued upon an affidavit which sought to *amend* something which had no existence, then the writ itself was a nullity and the court obtained no

jurisdiction over the *res,* the property attached. Jurisdiction over the subject-matter of an attachment is obtained by the levy thereon of a writ properly issued. [Hardin v. Lee, 51 Mo. 241.] A valid writ cannot be issued unless the statutory affidavit has been filed. Such an affidavit is an indispensable prerequisite to the issuance of a valid attachment writ. [Norman v. Pennsylvania Fire Ins. Co., 237 Mo. 576.] If the affidavit filed is indeed an affidavit but is merely *insufficient* in some one or more features thereof, the statute provides that it may be amended. [Sec. 2341, R. S. 1909; Avery v. Good, 114 Mo. 290; Maurer v. Phillips, 187 Mo. 440.] But where a writ of attachment is issued and levied *without* an affidavit, or, (which is the same thing), upon a paper purporting to be an affidavit, but which in fact is not, the writ is void and cannot be galvanized into life by the filing of an affidavit *amending* an affidavit which never existed. And the levying of such a writ cannot confer jurisdiction over the subject-matter of the attachment, i. e., the property seized. [Third National Bank v. Garton, 40 Mo. App. 113; Hargardine v. Van Horn, 72 Mo. 370.] The principle that the failure to comply with the statutory prerequisites is fatal to the jurisdiction is also announced in Purcell v. Merrick, 172 Mo. App. 412. Nor does the appearance of the attachment defendant confer jurisdiction over the property seized. [Third National Bank v. Garton, supra.] Such appearance would give jurisdiction over the *person* of the defendant, but this would have no effect in giving validity to the attachment part of the suit. We, therefore, readily concede that if plaintiffs in error are right in their premise that the attachment writ by which the property was seized was issued upon an affidavit *amendatory* of a paper purporting to be an affidavit but which, neither in fact nor in law, was

an affidavit, then all proceedings in the attachment feature of the suit were *coram non judice* and void.

But are the plaintiffs in error right in their premise? This requires here a statement of the facts.

On May 23, 1911, the Bank filed its petition against Griffith in the circuit court of Bates county asking for judgment on the two promissory notes aforesaid. On the same day plaintiff filed a bond in attachment and also filed a paper which was in the form of an affidavit but neither the affidavit nor the jurat thereto was signed. Now, although on the same day a writ of attachment was issued, yet, so far as the record discloses, *nothing was done with this writ of attachment.* No return was made on it by the sheriff and this fact is affirmatively shown by the record.

On May 27, 1911, within four days after the filing of the petition, defendant Griffith appeared and filed a motion to dismiss the attachment because no affidavit had been filed. This motion was never acted upon in any way. Three days later, to-wit, May 30, 1911, the bank filed in court an affidavit for attachment in proper form, duly signed and sworn to by its cashier who swore that he was such officer, and that he made the affidavit for and on behalf of the bank. Neither the affidavit nor the order in reference to its filing said anything about a former affidavit, nor that it was made or filed as an amendment. The record entry of the court is as follows: ''Now on this day comes plaintiff herein by attorney and files his affidavit in attachment. Whereupon it is ordered by the court that writ of attachment issue to Bates county, Missouri against the defendant.''

The writ was thereupon issued. In addition to its direction to attach the defendant Griffith by his lands and tenements, goods, chattels, moneys, credits, evidences of debt and effects or so much thereof as would be sufficient to secure the amount of plaintiff's

demand, it directed the sheriff to summon E. P. Griffith to appear and answer at the next term to be begun and held on the first Monday of October following, and also to summon every person as garnishee in whose hands any evidences of debt were found.

This writ was duly levied upon certain personal property and also upon two tracts of real estate in Bates county, all as the property of said E. P. Griffith, as shown by the return of the sheriff thereon. The return further recites that on the 28th of July, 1911, the sheriff summoned J. M. Burns as garnishee, attaching in his hands all surplus money arising from the foreclosure of a deed of trust on the first described tract of real estate attached. This first described tract consisted of forty acres and was owned by E. P. Griffith, but during the lifetime of his *first* wife, he had encumbered it with a deed of trust to Burns as trustee for one Baskerville to secure a note for $1,000. This first wife died, and Griffith married again. The deed of trust was foreclosed by Burns, as trustee, on July 28, 1911, and the land brought $1,450 cash. It was this surplus above the note that Burns held and for which he was garnisheed. There can be no question that Burns was duly summoned as garnishee, and that he did not volunteer as a stranger as claimed by the plaintiffs in error. For, in addition to the recitals in the writ and return thereon, the stipulation filed by the parties in this court recites that ''on the same day, to-wit, July 28, 1911, the plaintiff bank caused a summons in garnishment in said cause to be issued and duly served upon the said J. M. Burns, trustee, who, in due time, entered his appearance, and filed his answer as garnishee.''

It seems that, shortly before the bringing of the suit herein by the bank, Griffith and his *second* wife, Catherine Griffith, made a deed without consideration, to one, James T. Mahoney, purporting to convey said

forty-acre tract subject to said deed of trust. Thereafter, Mahoney, also without consideration, made a quitclaim deed to it to Catherine Griffith. Consequently Burns, in his answer as garnishee filed at the October term, 1911, set up the foreclosure of the deed of trust and that he held a surplus of $304.11 above the note and costs of foreclosure, and that this surplus was claimed by Mahoney, by Catherine Griffith, by the defendant E. P. Griffith, and by the plaintiff bank. The answer then prayed that all of said parties be ordered to appear and interplead or present their respective claims to said fund. Pursuant to this prayer in Burns' answer, the court made an order directing him to pay the money into court, which he did, and he was thereupon discharged. The court also made an order and caused summons to be issued to Catherine Griffith, James T. Mahoney and E. P. Griffith ordering them to come into court and interplead for said $304.11, the surplus proceeds of the foreclosure. A copy of this order and summons was. duly served upon each of them. Mahoney filed a disclaimer. Catherine Griffith and E. P. Griffith refused to interplead, and made default.

At the October term, 1911, E. P. Griffith appeared in the original case and filed a plea in abatement denying the facts alleged as grounds for attachment. At the February term, 1912, the plea in abatement was tried resulting in a verdict and judgment sustaining the attachment. Thereafter, E. P. Griffith filed a second amended answer to the suit on the merits and that issue was also tried, resulting in a judgment for the bank as hereinbefore stated.

After these issues on the plea in abatement and on the merits had been determined in favor of the bank, the court then proceeded to hear and determine the question raised by its order of interplea, namely, as to who was entitled to the money which had been

192 App. 29.

garnisheed in the hands of Burns and which he had paid into court. The bank appeared, but Catherine Griffith and E. P. Griffith, although duly served with the order and summons as hereinbefore stated, did not appear, while Mahoney filed a disclaimer. The court found that the deed from E. P. Griffith to Mahoney and the deed from Mahoney to Catherine Griffith were both fraudulent and void, that they were made without consideration and for the purpose of hindering and delaying the creditors of said E. P. Griffith, and that as the bank had obtained judgment on the attachment and also on the merits for the sum of $6,485.25, it was entitled to the money garnisheed in Burns' hands, and awarded it to the bank to be applied upon its judgment.

With these facts stated, we are now in a position to take up the contention of the plaintiffs in error that the proceedings were *coram non judice* and void. Of course such contention could be applicable, if at all, only to the attachment proceedings and matters dependent thereon. It could not possibly apply to the judgment on the merits, since jurisdiction over the *person* of the defendant, E. P. Griffith, was conferred when he filed an answer and contested that issue. It will be understood, therefore, that in speaking of the question whether or not jurisdiction was obtained, we have reference to jurisdiction over the *res* in the attachment proceedings and in all proceedings dependent thereon.

The trouble with the contention of the plaintiffs in error—the Griffiths—is that it assumes that the jurisdiction of the court over the attached property depends somewhat upon the first writ issued, and that the affidavit filed by plaintiff was an attempted amendment of a step necessary to be taken to obtain the first writ but which in fact was not taken. It also proceeds on the assumption that the filing of the petition was

not the commencement of a suit by summons and that the subsequent filing of an affidavit would not authorize the issuance of a valid writ. But it must be borne constantly in mind that no levy was made under the first writ, nor did the levy that was made have anything to do with said first writ. The levy that was made was under the second writ and that was issued upon an affidavit filed, not as an amendment of anything, but as a separate and distinct step, sufficient in itself, and independent of any former step attempted or intended to. be made. There is no effort to have the second writ relate back to the date of the first, nor does the court's jurisdiction over the *res* depend in any way on said first writ.

The bank, by filing its petition on the two notes, had instituted its suit. There was a suit then pending. Section 2306, Revised Statutes 1909, provides that: "The plaintiff in any civil action which shall have been commenced by summons, and without original attachment, may, at any time pending the suit and before final judgment, sue out an attachment in such action, on filing an affidavit and bond, as required in cases of original attachment."

There was no direction to the clerk to withhold or delay the issuance of summons. Hence a suit on the note was commenced the moment the petition was filed. [Matthews v. Stephenson, 172 Mo. App. 220, l. c. 228.] But if the issuance of summons was necessary in order to constitute the suit one "commenced by summons," within the meaning of section 2306, then there was such a suit pending since the first writ issued by the clerk, immediately on the filing of the petition, was a writ of summons and was valid as such, though the attachment feature thereof was wholly invalid. Consequently, under section 2306, the bank was entitled to a writ of attachment when it filed its affidavit therefor. This was the final step re-

quired by the attachment statutes. [Secs. 2294, 2298, 2306, R. S. 1909.] The suit had been commenced by summons, a bond had been filed and now the final step had been taken by the filing of the affidavit. The fact that the bank *intended* to bring an attachment suit at first, makes no difference. As a matter of fact and of law it did not bring an attachment suit. Nothing was actually commenced more than an ordinary suit by summons. Everything beyond that was only so much waste paper. Consequently the court had authority to order the second writ to issue. It was a *valid writ* and, since the levy was made and the property was seized under this writ, the court obtained jurisdiction over the property attached.

The court, in ordering the writ to issue, thereby impliedly approved the bond. It has been held that where the clerk receives the bond and issues the writ, the bond is thereby approved. [Whitman Agricultural Assn. v. National Railway etc. Assn., 45 Mo. App. 90.] Much more reason is there for presuming that the court, since it ordered the writ to issue, must have approved the bond although the record does not disclose the entry of a formal order of approval. But if the absence of a formal order of approval constituted a technical defect in the proceedings leading up to the issuance of the writ, still such objections to the writ are waived by the filing of the plea in abatement. [Henderson v. Drace, 30 Mo. 358; Scully v. Cox, 75 Mo. App. 563; Ellis v. Lamme, 42 Mo. 153; Hubbard v. Slavius, 218 Mo. 598, l. c. 616; Hudson v. Cahoon, 193 Mo. 547, l. c. 557.] Besides, even if the bond was insufficient in that it was not formally approved, it is too late after judgment on a plea in abatement filed, to raise such objection. [Englehart etc. Co. v. Burrell Sisters, 66 Mo. App. 117.]

Nor can E. P. Griffith claim lack of jurisdiction over his person because the return of the sheriff says

nothing' about the service of summons or of attachment upon him. Section 2329, Revised Statutes 1909, says: "When the defendant . . . *appears to the action* . . . the judgment and execution shall hold, not only the property attached, but the other property of the defendant." So that, although the filing of a plea in abatement and of an answer to the merits will not confer jurisdiction over the property attached, yet the appearance of defendant and the filing of such matters will cure the omission to serve the writ personally on the defendant. Such appearance will not cure the omission to make a valid levy and seizure of property, but it will cure the failure to obtain personal service on the defendant. Being *sui juris,* he could waive the service of the summons on *him,* and he did so when he appeared and filed his plea and answers. [State ex rel. v. Spencer, 164 Mo. 48, l. c. 55; Davidson v. Hough, 165 Mo. 561; Curry v. Trinity Zinc and Lead etc. Co., 157 Mo. App. 423; Evans v. King, 7 Mo. 411; Whiting v. Budd, 5 Mo. 443.]

If the property was levied upon and seized under a valid writ, then the court obtained jurisdiction over the property not only as to E. P. Griffith but also as to the interpleader, Catherine Griffith. The parties have stipulated, in addition to what is shown by the sheriff's return, that a summons and garnishment was issued and duly served on Burns, that he entered his appearance, filed his answer, paid the money into court and was discharged. The stipulation also shows that summons was issued and duly served upon all the parties to come in and interplead for said fund, and that the bank did so. Catherine Griffith, however, made default. As the court had obtained jurisdiction over the fund by the levy of the writ upon the land as the property of E. P. Griffith, said land being the source of said fund, it was her duty to appear and set

up her claim, and, having failed to do so, she is concluded by the judgment. [20 Cyc. 1133.] The garnishee had the right to set up, in his answer, that there were rival claimants to the fund in his hand and have them brought into court and required to interplead therefor. [Secs. 2439 and 2440, R. S. 1909.] And if the claimants be notified and do not appear and interplead, the averment in the garnishee's answer of an assignment or sale to any of such claimants must be disregarded, and a judgment, after such notice, will be a complete protection to such garnishee. [McKittrick v. Clemmens, 52 Mo. 160, l. c. 163; Schwartz v. Riner, 66 Mo. App. 476, l. c. 480; Evans v. Norman, 14 Ala. 662.] In this case, however, the court heard the testimony as if the allegations of the garnishee's answer presented the claim of Catherine Griffith to the fund, but found that the two deeds on which her claim was based were fraudulent and void, and awarded the fund to the bank.

It is urged that the affidavit is fatally defective because is starts off with the usual caption "State of Missouri, County of *Bates,* ss." and the officer taking the affidavit is a notary public of St. Clair county. But the bank is located in St. Clair county, the one making the affidavit was the cashier of said bank and the jurat of the officer taking the affidavit says it was "subscribed and sworn to before me *at Appleton City, Mo.,* this May 29, 1911." Thus it appears that the affidavit was made in St. Clair county where the officer had jurisdiction to administer oaths. Consequently, the above-named recital of the venue in Bates county, written above the style of the case in which the affidavit was made, had no effect to destroy the affidavit.

Under all the foregoing facts, we think the claim of the plaintiffs in error that the court was without jurisdiction and that its orders were *coram non judice* and void, is untenable. Wherefore the judgment

should be affirmed, since there is no other ground upon which the court's right to render judgment has been attacked. *Ellison, P. J.,* concurs. *Johnson, J.,* dissents.